FORT WORTH INDEPENDENT
SCHOOL DISTRICT,
Appellant

v.

Joseph PALAZZOLO, Appellee

NO. 02–14–00262–CV

Court of Appeals of Texas,
Fort Worth.

DELIVERED: July 7, 2016

Thomas P. Brandt, for Appellant.

Paul F. Wieneskie, for Appellee.

PANEL: DAUPHINOT, MEIER, and SUDDERTH, JJ.

## OPINION

BILL MEIER, JUSTICE

### I. INTRODUCTION

Appellant Fort Worth Independent School District (FWISD) appeals from a final judgment rendered on a jury verdict in favor of Appellee Joseph Palazzolo on his claim for violation of the Texas Whistleblower Act (TWA). *See* Tex. Gov't Code Ann. § 554.002(a) (West 2012). In addition to challenges to the damages and attorneys' fees awards, FWISD argues that the trial court abused its discretion by failing to submit a jury question on an affirmative defense set out in the TWA. *See id.* § 554.004(b) (West 2012). We will

sustain FWISD's charge-error issue, not reach its other three issues, and reverse and remand for a new trial.

## II. Background

Palazzolo was an assistant principal at FWISD's Arlington Heights High School (AHHS) during the 2008/2009 and 2009/2010 school years. He oversaw the entire ninth grade class and interacted regularly with the ninth grade teachers and other administrators.

In the spring of 2010, a number of troubling issues arose at AHHS that contributed to an atmosphere or culture at the school that several staff members described as "extremely uncomfortable," "combative," "hostile," "chaotic," or "unsettling." The primary concerns included the ongoing behavior of the athletic director, who was improperly exercising administrative functions and acting unprofessionally around the staff and students, and allegations that some AHHS administrators were fraudulently altering students' attendance records in violation of Texas law.

In late May or early June 2010, Michael Menchaca, the Director of FWISD's Office of Professional Standards (OPS), initiated an investigation after receiving reports from several different sources, including Palazzolo, regarding the alleged wrongful conduct at AHHS. As the AHHS campus representative for a diversity program that FWISD had established to educate its employees about unlawful workplace discrimination, harassment, and retaliation, Palazzolo was responsible for receiving reports from staff of improper conduct and presenting them to OPS. Palazzolo turned over a number of anonymous statements that he had received from several teachers and provided Menchaca with additional information involving the allegations of attendance fraud.

Sometime in mid-June 2010, Palazzolo received a performance appraisal indicating that he needed to improve his approach to resolving conflicts with parents, staff, and students. Later in the month, Palazzolo met with an FWISD executive director and AHHS's principal, and after Palazzolo explained that he had not been informed of anything to substantiate the negative review, the performance appraisal was amended to delete it.

Around the same time as the meeting about the appraisal, Palazzolo learned that FWISD had decided to reassign him to a different school (the International Newcomers Academy) with a reduction in pay. Palazzolo filed a grievance and complained that he was being demoted in retaliation for reporting the problems at AHHS. In early July 2010, Palazzolo met with an FWISD deputy superintendent, and the decision was made to instead reassign him to Western Hills High School, along with a reinstatement of pay.[1]

Meanwhile, Menchaca continued the AHHS investigation—which he described as "allegation after allegation after allegation being forwarded to us or told to us, OPS, myself"—and in July 2010, an AHHS assistant principal lodged allegations of improper conduct against Palazzolo. OPS expanded its investigation to include those allegations, and it proceeded to uncover numerous written complaints that were made by parents, staff, and students against Palazzolo regarding his treatment of students and staff at AHHS, including his creating a "hostile work environment," exhibiting "forceful" behavior, and demon-

1. At trial, several individuals recalled that Palazzolo had no problem with the transfer to Western Hills.

strating "disdain" for policies with which he disagreed.[2]

By August 2010, Palazzolo thought that nothing would come of FWISD's investigation into the allegations involving AHHS, so on August 9, 2010, he filed a complaint with the Texas Education Agency (TEA). His report stated in part, "In my capacity as Campus Diversity Officer, I had several teachers report to m[e] countless instances of attendance falsification; grade changing; inappropriate conduct with and before students; and hostile work environment. . . . I do not know who to report this to as the District has repeatedly failed to fully investigate the allegations. . . ." On August 26, 2010, FWISD placed Palazzolo on paid administrative leave. Just two days earlier, it had received a letter from the parents of an AHHS student complaining that Palazzolo had grabbed their daughter.

Dr. Reyna detailed the findings from the AHHS investigation in a report dated October 15, 2010. According to Dr. Reyna, "there had been some egregious mismanagement of the school." [3]

On October 26, 2010, Dr. Reyna submitted a report to FWISD's Board of Education recommending that Palazzolo's employment with FWISD be terminated for good cause based upon six grounds that were unrelated to his reports of wrongdoing at AHHS. The Board voted 6 to 3 to terminate Palazzolo's employment.

Palazzolo appealed his termination to the TEA, after which a hearing examiner ruled in favor of FWISD. Palazzolo then appealed to the Texas Commissioner of Education, who reversed the hearing ex-

aminer's decision because FWISD had paid the examiner an amount that exceeded the statutory cap. The case was then remanded to FWISD, which had the option of either pursuing another hearing or terminating Palazzolo and paying him one year's salary. The Board chose the latter option by a unanimous vote on February 14, 2012.

Palazzolo sued FWISD in July 2012, alleging that, in violation of the Whistleblower Act, it had terminated his employment "in retaliation for his good faith reports of violations of law to appropriate law enforcement authorities." In addition to a general denial, FWISD affirmatively pleaded "that it would have taken the action against [Palazzolo] with respect to his employment based solely on information, observation, or evidence that is not related to (and regardless of) [Palazollo's] alleged reports of violations of the law."

At trial, Palazzolo presented evidence that FWISD had terminated his employment in retaliation for making reports about the problems at AHHS. Conversely, FWISD presented evidence that the reports played no role in the Board's decision to terminate Palazzolo's employment; rather, he was fired for the reasons identified in Dr. Reyna's October 26, 2010 report. At the brief charge conference, the trial court denied FWISD's objection to the "noninclusion" of a jury question on its government code section 554.004(b) defense and submitted the following question on liability:

Was Mr. Joseph Palazzolo's report to an appropriate law enforcement authority made in good faith and a cause of

---

**2.** At some point, Dr. Sylvia Reyna, FWISD's Chief of Administration, began to assist Menchaca with the investigation.

**3.** The TEA'S Division of Financial Audits concluded that FWISD had "erroneously over-

reported days of attendance" and made a monetary adjustment to FWISD's funding in the amount of approximately $18,000. Several administrators, including AHHS's principal, either resigned or retired.

Fort Worth Independent School District's termination of Mr. Palazzolo?

The report was a cause of the termination if it would not have occurred when it did but for the report's being made. Mr. Joseph Palazzolo does not have to prove the report was the sole cause of the termination.

"Good faith" means that:

(1) Joseph Palazzolo believed that the conduct reported was a violation of law and

(2) his belief was reasonable in light of his training and experience.

Answer "Yes" or "No."

Answer: *Yes*

As indicated, the jury returned a verdict in favor of Palazzolo. It awarded him $78,000 for lost wages during the period of suspension or termination; $514,958.69 for past lost employee benefits; $553,393.40 for front pay; and $1,000,000.00 for past compensatory damages. The trial court signed a final judgment that incorporated the jury's awards and that also awarded Palazzolo trial and appellate attorneys' fees.

## III.  FWISD's AFFIRMATIVE DEFENSE

FWISD argues in its first issue that the trial court abused its discretion by failing to submit a question on its government code section 554.004(b) affirmative defense. It contends that it both pleaded and presented evidence to support the defense and that we should either render a take-nothing judgment in its favor because the error "did cause" the rendition of an improper verdict or, alternatively, remand for a new trial because the error "probably caused" an improper verdict. Palazzolo responds that FWISD waived any alleged charge error and that the trial court did not abuse its discretion.

### A.  The TWA

The TWA bars state and local governments from retaliating against public employees who report violations of law. Tex. Gov't Code Ann. § 554.002(a). Section 554.004(b) sets out an affirmative defense—according to its title and text—that states,

It is an affirmative defense to suit under this chapter that the employing state or local governmental entity would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a report protected under this chapter of a violation of law.

*Id.* § 554.004(b).

### B.  Preservation

#### 1.  Tendered Written Question

■■ Palazzolo contends that FWISD failed to preserve this issue for appeal because it neither tendered a written request for the question nor obtained the trial court's endorsement that the request was "refused" after the trial court gave its charge to the parties for examination. To preserve error in the omission of a party's own question, the party must have objected to the omission, tendered the question in substantially correct form, and obtained a ruling from the trial court. Tex. R. Civ. P. 274, 276, 278; *Sears, Roebuck & Co. v. Abell*, 157 S.W.3d 886, 893 (Tex.App.—El Paso 2005, pets. denied). FWISD does not dispute that it did not tender a written question on its affirmative defense during the charge conference, but it counters that it nevertheless preserved this issue because it (i) sufficiently alerted the trial court of the error in refusing to submit a question—by filing a proposed jury charge before trial that contained a question on its section 554.004(b) defense, by filing written objections to Palazzolo's proposed

charge, and by specifically objecting to the omission during the charge conference—and (ii) obtained a ruling thereon. We agree with FWISD.

Although "[a] charge filed before trial begins rarely accounts fully for the inevitable developments during trial," the supreme court has "held that a party may rely on a pretrial charge as long as the record shows that the trial court knew of the written request and refused to submit it." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 831 (Tex.2012) (citing *Alaniz v. Jones & Neuse, Inc.*, 907 S.W.2d 450, 451–52 (Tex.1995)). "[T]rial court awareness is the key." *Id.*; *see State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992) ("There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.").

The record demonstrates that FWISD filed a proposed jury charge before trial that contained a question in substantially correct form implicating the section 554.004(b) affirmative defense:

> Did Fort Worth ISD terminate Mr. Palazzolo's employment on February 14, 2012 solely for reasons other than his reports of violations of law to appropriate law enforcement authorities?
> Answer "Yes" or "No."
> Answer: _____
> *Sources:* Tex. Gov. Code § 554.004

FWISD also filed objections to Palazzalo's amended proposed jury charge, one of which stated that "Defendant objects to Plaintiff's Jury Charge because it wholly eliminate[d] Defendant's properly plead affirmative defenses. Specifically, it does not include a question concerning the statutory affirmative defense regarding whether Fort Worth ISD terminated Mr. Palaz-

zolo for reasons other than his reports of violations of law."

Around the middle of the trial, the trial court advised the parties that it wanted the charge completed by the time the testimony closed and that they would be discussing it during the breaks. The trial court told the parties, "What I don't want to do is get down to formal objections to it and somebody raise something [for the first time]." Later in the trial, just before the final witness, the trial court told one of FWISD's attorneys, "If you give it to me [FWISD's proposed jury charge], I'll be looking at it." At the formal charge conference, but before FWISD made its objections on the record, the trial court stated, "And it's my understanding the Defense does have some objections. We have put *some* matters you requested in, *but there were some additional issues I believe you wanted.* You can address that at this time." [Emphasis added.] Among other things, FWISD objected to "the noninclusion of question No. 3 in Defendant's proposed jury instructions concerning the affirmative defense granted to Defendant by statute by 554.004(b)." The trial court told FWISD, "[T]he Court overrules your objections."

In light of FWISD's proposed jury charge, FWISD's written and oral objections to the charge, the trial court's statements indicating an awareness that it had excluded from the charge several matters that FWISD wanted included in the charge, and the trial court's express overruling of FWISD's objections, we cannot agree with Palazzolo that FWISD waived this issue by failing to tender a written question on its defense and obtain an endorsement refusing the same at the formal charge conference. *See Cruz*, 364 S.W.3d at 830–31; *Alaniz*, 907 S.W.2d at 451; *Payne*, 838 S.W.2d at 241.

## 2. Affirmative Defense or Inferential Rebuttal Issue

■ Palazzolo next argues that FWISD waived this issue because, although labeled an affirmative defense, section 554.004(b) is more properly viewed as an inferential rebuttal issue. The distinction is significant for preservation purposes because an inferential rebuttal issue may only be submitted through a jury instruction and not as a question. *See* Tex. R. Civ. P. 277; *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex.2006). FWISD never made or tendered a written request for an instruction on its section 554.004(b) affirmative defense; consequently, if the statute advances an inferential rebuttal issue, as Palazzolo contends, then FWISD failed to preserve this issue for review.

■ An inferential rebuttal defense operates to rebut an essential element of the plaintiff's case by proof of other facts, whereas an affirmative defense is a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim *even if* all the allegations in the plaintiff's petition are true. *Zorilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155–56 (Tex. 2015); *Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 430 (Tex.2005).

■ Palazzolo informs us that both Houston courts of appeals have construed section 554.004(b) as an inferential rebuttal issue—although neither court used that express term—and that in a previous case, this court observed that the statute "tends to negate" the causation element of a plaintiff's whistleblower case, thus apparently suggesting that the statute sets out an inferential rebuttal issue. *See Steele v. City of Southlake*, 370 S.W.3d 105, 117 (Tex.App.—Fort Worth 2012, no pet.);

*City of Houston v. Levingston*, 221 S.W.3d 204, 238 (Tex.App.—Houston [1st Dist.] 2006, no pet.); *Harris Cty. v. Vernagallo*, 181 S.W.3d 17, 23 n. 12 (Tex.App.—Houston [14th Dist.] 2005, pet. denied); *see also Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex.1995) (reasoning that the TWA requires a causal link between the public employee's report and the adverse action). We can certainly see that section 554.004(b) coincides to some extent with the TWA's "but for" causation requirement, but we cannot agree with Palazzolo that the legislature intended section 554.004(b) to operate as an inferential rebuttal issue.[4]

■ Section 554.004(b) is a statute, and when construing a statute, the court's primary objective is to determine and to give effect to the legislature's intent as expressed by the language of the statute. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex.2008). We use definitions prescribed by the legislature and any technical or particular meaning the words have acquired. *Id.* We consider the specific statutory language at issue, but "we must do so while looking to the statute as a whole, rather than as 'isolated provisions.'" *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex.2014). When construing a statute, we may consider the object sought to be obtained and the consequences of a particular construction. Tex. Gov't Code Ann. § 311.023(1), (5) (West 2013).

■ The term "affirmative defense" has acquired a particular meaning. *See Zorilla*, 469 S.W.3d at 155–56. The legislature knows what that meaning is, and it knows how to use the term when it wants to convey that meaning, just as it has done

---

4. Nor do we agree with Palazzolo's implication that our opinion in *Steele* treated section 554.004(b) as an inferential rebuttal issue.

on numerous occasions. *See, e.g.,* Tex. Civ. Prac. & Rem. Code Ann. §§ 100.001 (providing for "affirmative defense" that use of force in defense of commercial nuclear plant was justified), 147.002 (providing "affirmative defense" to action in which a claimant seeks damages or other relief for harm caused by a computer date failure) (West 2011); Tex. Prop.Code Ann. § 162.031(a) (West 2014) (providing "affirmative defense" to trustee misapplication of trust funds); Tex. Fam. Code Ann. § 61.056 (West 2014) (providing "affirmative defense" of inability to financially pay in enforcement action). Our job is not to second guess the legislature's clear and unambiguous language but to give it effect. *See City of Rockwall,* 246 S.W.3d at 625.

Further, "the hallmark characteristic of [an affirmative defense] is that the burden of proof is on the defendant to present sufficient evidence to establish the defense and obtain the requisite jury findings." *Zorilla,* 469 S.W.3d at 156. As the charge instructed, Palazzolo had the burden under section 554.002(a) to prove that his report was "a cause" of his termination. Under section 554.004(b), FWISD had the burden to prove that it would have terminated Palazzalo based solely on information unrelated to his reports. Indeed, FWISD assumed that very burden by submitting a separate question on the defense in its proposed jury charge. *See Payne,* 838 S.W.2d at 239 (observing that question requested by State placed burden of proof on it rather than plaintiff).

Lastly, section 554.004(b) operates precisely as an affirmative defense does, and it is apparent that the legislature intended it that way. The TWA "is designed to enhance openness in government

and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing." *Davis v. Ector Cty., Tex.,* 40 F.3d 777, 785 (5th Cir.1995). It achieves this purpose by prohibiting state and local governments from retaliating against public employees who report violations of law. *See* Tex. Gov't Code Ann. § 554.002(a). At the same time, however, a defendant is relieved of liability under the TWA if it proves that it would have taken the same complained-of action against the employee based solely on information unrelated to the employee's report. *Id.* § 554.004(b); *see Steele,* 370 S.W.3d at 118–19 (reasoning that section 554.004(b) precludes liability in light of certain conclusive evidence). Section 554.004(b) thus reflects the legislature's competing concern with "punishing employers for legitimately sanctioning misconduct," *see Hinds,* 904 S.W.2d at 636, or—stated otherwise—permitting employers to "incur liability for [an] independently justified adverse personnel action." *O'Rourke v. Commonwealth,* 566 Pa. 161, 778 A.2d 1194, 1204 (2001). Viewed in context, the TWA's statutory scheme—providing for both a cause of action to impose liability and a separate affirmative defense to potentially eliminate, or avoid, liability—corroborates our conclusion that the legislature intended section 554.004(b) to function as an affirmative defense.[5]

FWISD preserved this issue for appellate review.

**C. Merits**

The trial court is required to submit questions raised by the written pleadings and the evidence. Tex. R. Civ. P. 278. This is a "substantive, non-discretionary directive to trial courts requiring

---

**5.** Insofar as Palazzolo raises this same issue in his argument on the merits, it is unpersuasive for these same reasons.

them to submit requested questions to the jury if the pleadings and any evidence support them." *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992). A trial court may refuse to submit an issue only if no evidence exists to warrant its submission. *Id.* We review a trial court's decision to submit or refuse a jury question or instruction for an abuse of discretion. *In re V.L.K.,* 24 S.W.3d 338, 341 (Tex.2000).

■ FWISD pleaded the section 554.004(b) affirmative defense—"that it would have taken the action against [Palazzolo] with respect to his employment based solely on information, observation, or evidence that is not related to (and regardless of) [Palazollo's] alleged reports of violations of the law." Additionally, Dr. Reyna's report was admitted into evidence at trial and recommended that Palazzolo be terminated for good cause based on six grounds that were unrelated to the reports that Palazzolo made to FWISD regarding the alleged wrongful conduct at AHHS, including that he had (1) "[f]alsified information on his application for employment with the District, including information regarding criminal history and previous work experience"; (2) "[v]iolated District policies"; (3) "[c]reated a hostile work environment for campus personnel"; (4) "[t]reated students and staff disrespectfully and in violation of the Code of Ethics for Educators"; (5) "[a]ssessed discipline in at least three specific instances in an inequitable manner resulting in harsher disciplinary consequences for minority students"; and (6) "[e]ngaged in inappropriate physical contact with a student." Dr. Reyna's recommendation was expressly based on a number of "applicable provisions of state law" and "provisions of Board policy," including "[f]ailure to fulfill duties or responsibilities"; "[f]ailure to maintain an effective working relationship ... with parents, the community,

or colleagues"; "[d]iscourteous treatment of others"; and acting in a way that is "detrimental to students, other employees, or the District's best interests."

Norman Robbins, an FWISD Board member, testified that Palazzolo was terminated for the six bullet points contained in Dr. Reyna's report and not for any of the reports that he had made involving the alleged wrongdoing at AHHS:

> Q. All right. These six bullet points that we've gone over, were these the reasons for your decision to terminate?
>
> A. Yes.
>
> Q. Were there any other reasons?
>
> A. No, I don't think so.
>
> Q. Now, Mr. Palazzolo is here, and he's saying that he made reports of wrongdoing to OPS and to others outside of the school. You're aware of that?
>
> A. Yes.
>
> . . . .
>
> Q. Did his reports of wrongdoing play any part in your decision?
>
> A. No. In fact, it was my understanding he was not the first to report wrongdoing in this case.

Dr. Reyna likewise testified that Palazzolo was terminated for the six reasons set out in her report to the Board. Accordingly, the record demonstrates that FWISD both pleaded and presented evidence to support its section 554.004(b) affirmative defense.

■ Palazzolo argues that the trial court nevertheless did not abuse its discretion by not submitting a question on FWISD's affirmative defense because it was "effectively incorporated" into the charge's causation instruction, which stated in relevant part that "[t]he report was a *cause* of the termination if it would not have occurred when it did but for the report's being made." [Emphasis added.] Palazzolo relies upon the following obser-

vation that the Houston appellate courts made in *Levingston* and *Vernagallo* :

"If the plaintiff was fired *solely* for a reason unrelated to his report of illegal activity [the section 554.004(b) defense], then his report could not have been a *cause* of his termination. And, like two sides of the same coin, if the report was a *cause* of his termination, the plaintiff could not have been fired *solely* because of an unrelated reason.

*See Levingston*, 221 S.W.3d at 238 (emphasis added); *Vernagallo*, 181 S.W.3d at 23 n. 12 (emphasis added in part). Thus, Pallazolo contends that in light of the instruction, "[t]here was ample opportunity for the jury to consider the District's defensive theory and evidence on the charge that was submitted." This is not a desirable approach.

Rather than rely upon the jury to deduce a defendant's section 554.004(b) affirmative defense through inferences and logical deductions, the better, more practical approach is to set out the defense in clear and conspicuous terms, leaving no doubt that the charge properly conveyed the defense for the jury's consideration. The supreme court stressed this very point long ago in a case involving the trial court's refusal to submit an instruction on unavoidable accident:

It is claimed by counsel for [the plaintiff] that the defense presented by this special charge was covered by the general charge of the court in which the jury was instructed.... We must look at the court's charge as practical experience teaches that a jury, untrained in the law, would view it.... [I]t is not to be supposed that the jury considered an issue not developed by the charge of the court. Under such circumstances the defendant had the right to call upon the court to submit specifically the group of facts and circumstances which raised the issues expressed in the special charge. Without this protection, the jury, in rendering a general verdict under a charge so general as that given, may have disregarded a defense which they might have given effect to if it had been brought to their attention.

*Galveston, H. & S.A. Ry. Co. v. Washington*, 94 Tex. 510, 517–18, 63 S.W. 534, 538 (1901). Our approach heeds this guidance.

Palazzolo also argues that the trial court committed no abuse of discretion because Texas courts prefer broad-form jury questions rather than separate questions that may confuse the jury. Submitting the affirmative defense in a separate question would not have conflicted with the preference for broad form submission or confused the jury. Affirmative defenses are normally submitted in separate questions with the burden squarely placed upon the party asserting the same. *See Gibbins v. Berlin*, 162 S.W.3d 335, 340–41 (Tex. App.—Fort Worth 2005, no pet.) (reasoning that self-defense instruction was erroneous because "self-defense is a plea in confession and avoidance, that is, it is an affirmative defense that normally calls for a question to the jury as opposed to an inferential rebuttal, which is normally addressed by way of instruction"). We also note that PJC 107.7 recommends using the following question when after-acquired evidence is pleaded by the defendant in any wrongful discharge claim: "Did *Paul Payne* engage in misconduct for which *Don Davis* would have legitimately discharged *him* solely on that basis?" State Bar of Tex., Tex. Pattern Jury Charges—Employment, PJC 107.7 (2014). Section 554.004(b), of course, does not involve after-acquired evidence of employee misconduct, but it does incorporate a similar principle as that underlying the question in PJC 107.7—specifically, whether the employer would have taken the same com-

plained-of action against the employee based solely upon a lawful reason.

■ Finally, in the portion of FWISD's first issue addressing harm, it argues that instead of *remanding* for a new trial because the trial court's error "probably caused" the rendition of an improper judgment, we should *render* a take-nothing judgment in its favor because the trial court's error "did cause" the rendition of an improper judgment. FWISD seeks this relief, it contends, because "the uncontroverted evidence conclusively establishes that the termination of Palazzolo's employment in 2012 would have occurred regardless of Palazzolo's report of wrongful conduct." This is not a harm argument; FWISD is actually arguing that the evidence conclusively establishes its entitlement to the section 554.004(b) affirmative defense such that we must render a judgment in its favor. The supreme court recently addressed an identical issue involving a different statute. *See R.R. Comm'n of Tex. v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 566–71 (Tex.2016). It reviewed the evidence and concluded that it could not render judgment in favor of the Railroad Commission because a fact issue existed on the affirmative defense that the trial court had erroneously failed to submit to the jury. *Id.* The record in this case demands the same result.

Contrary to FWISD's evidence that it would have terminated Palazzolo based solely on reasons other than his reports, numerous witnesses testified that FWISD terminated Palazzolo in retaliation for, or precisely because of, the reports that he made regarding the wrongful conduct at AHHS. One of those witnesses, Larry Shaw, a former executive director of the United Teachers Association, testified,

> Q. Did anybody else besides Joe make these reports to the Texas Education Agency?

> A. Not that I'm aware of.

> Q. And are you aware of whether anybody else was fired like he was?

> A. Nobody else was fired. He was kind of the messenger, and they killed the messenger. Teachers were supposed to report to Joe as the diversity officer and he was supposed to report, and they did that and he did that.

> Q. In your opinion, as the representative of teachers, what does the timing of this demotion and then suspension say about his reports?

> A. I think he was retaliated against, if you want to know the truth, and it sent a chill across the district. Nobody brings anything up anymore because they're afraid that they'll get in trouble for doing so.

> Q. So you're stating that because—since all this happened it's sort of been out there and a lot of teachers know about it, right?

> A. Everybody knows about it, I think. It's been in the newspaper enough and all that kind of stuff. And he blew the whistle and he got fired, as far as teachers were concerned.

> . . . .

> Q. So you said as one out of thousands this case stands out to you as blatant retaliation?

> A. This one does. A lot of times you look at it and you go, well, I don't think administration is retaliating; they just want to see change. This one, to me, was blatant retaliation. They went looking everywhere they could find.

Palazzolo disputed each of the six reasons that Dr. Reyna set out in her report recommending his termination, describing them as either "untrue" or "not true." A member of FWISD's Board testified that it was "obvious" that "there was a systematic plan to dig up information so that Mr.

Palazzolo could be terminated." Shaw opined similarly,

Q. Do you think that the School District was sort of trying to dig stuff up to use to fire him?

A. Oh, yes.

. . . .

Q. Now, in your opinion was this retaliation against Joe?

A. Yeah, it was retaliation. They wanted him gone, and they started, in my opinion, looking for things to get him gone. . . .

We hold that Palazzolo presented evidence raising a fact issue on FWISD's affirmative defense under government code section 554.004(b); therefore, we may not render judgment in FWISD's favor, and we overrule this part of FWISD's first issue. We also hold that the trial court abused its discretion by failing to submit FWISD's government code section 554.004(b) affirmative defense. *See* Tex. R. Civ. P. 278. We sustain the remainder of FWISD's first issue.

### D. Harm

■■■■ A judgment will not be reversed for charge error unless the error was harmful because it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals. Tex. R. App. P. 44.1(a). Charge error is generally considered harmful, and thus reversible, if it relates to a contested critical issue. *Gulf Energy Expl. Corp.*, 482 S.W.3d at 571. Having thoroughly reviewed the entire record, FWISD's government code section 554.004(b) affirmative defense is precisely such an issue. The trial court's error was harmful.[6]

---

6. We therefore need not address FWISD's remaining three issues. *See* Tex. R. App. P. 47.1.

## IV. CONCLUSION

Having sustained part of FWISD's first issue, we reverse the trial court's judgment and remand this cause for a new trial.