

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00205-CV

———————————————

FORT WORTH INDEPENDENT SCHOOL DISTRICT, Appellant

V.

JOSEPH PALAZZOLO, Appellee

———————————————

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV12-07-438

———————————————

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

## I. Introduction

In 2012, Appellee Joseph Palazzolo, who had been one of Appellant Fort Worth Independent School District (FWISD)'s assistant principals, sued FWISD, alleging that it had violated the Whistleblower Act by firing him in retaliation for reporting its legal violations. Six years later,[1] FWISD filed a plea to the jurisdiction, which the trial court denied.

---

[1]The supreme court has aptly described this type of situation, acknowledging that while the legislature "has established administrative procedures with short deadlines to encourage prompt resolution of teacher contract disputes[,] . . . appeals and remands may extend those procedures for years." *O'Neal v. Ector Cty. ISD*, 251 S.W.3d 50, 51–52 (Tex. 2008) (holding that a teacher may not file a parallel suit in state court to avoid a potential limitations bar when the administrative remedies available provide the same relief as in the collateral litigation and noting that "[n]o matter how long the administrative proceedings take, O'Neal's damage claims will not be time-barred as long as she continues to meet the Chapter 21 deadlines"). *See generally* Charles Dickens, *Bleak House* (eBook #1023, Project Gutenberg) ("[*Jarndyce v. Jarndyce*] has . . . become so complicated that no man alive knows what it means. The parties to it understand it least, but it has been observed that no two Chancery lawyers can talk about it for five minutes without coming to a total disagreement as to all the premises."), *at* http://www.gutenberg.org/files/1023/1023-h/1023-h.htm (last visited June 4, 2019).

Previous appeals in the instant case and related cases include *Fort Worth ISD v. Palazzolo* (*Palazzolo I*), No. 02-12-00053-CV, 2012 WL 858632, at *1 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.) (dismissing appeal on FWISD's motion); *Fort Worth ISD v. Palazzolo* (*Palazzolo II*), No. 02-13-00006-CV, 2014 WL 69889, at *1, *6 (Tex. App.—Fort Worth Jan. 9, 2014, no pet.) (mem. op.) (reversing trial court's denial of FWISD's motion for summary judgment and rendering judgment on Palazzolo's transfer and appraisal-report claims); *Palazzolo v. Fort Worth ISD Bd. of Trustees* (*Palazzolo III*), No. 02-15-00302-CV, 2016 WL 741862, at *1 (Tex. App.—Fort Worth Feb. 25, 2016, no pet.) (mem. op.) (dismissing appeal on Palazzolo's motion); and *Fort Worth ISD v. Palazzolo* (*Palazzolo IV*), 498 S.W.3d 674, 676–77 (Tex. App.—

In a single issue in this accelerated interlocutory appeal,[2] FWISD complains that the trial court lacks subject matter jurisdiction over Palazzolo's Whistleblower Act claim against it because Palazzolo did not file suit until after the Whistleblower Act's jurisdictional 30-day limitations period had run. We affirm.

## II.  Background

Palazzolo worked for FWISD in the 2007–2008 school year as a history teacher and was hired as an assistant principal for the 2008–2009 and 2009–2010 school years. His 2009 contract was for a two-year term, i.e., the 2009–2010 and 2010–2011 school years. The instant dispute arose in August 2010 when Palazzolo filed a complaint about FWISD with the Texas Education Agency (TEA) before the new school year started. *Palazzolo IV*, 498 S.W.3d at 677–78 (reciting allegations of attendance falsification, grade changing, inappropriate conduct with students, and hostile work environment).[3]  FWISD placed Palazzolo on paid administrative leave, and on October 26, 2010, FWISD's Chief of Administration submitted a report to FWISD's Board, proposing that Palazzolo's employment be terminated for good cause "based

Fort Worth 2016, pet. denied) (reversing Palazzolo's judgment on jury verdict for jury charge error and remanding for new trial).

[2]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

[3]As noted in *Palazzolo IV*, TEA's Division of Financial Audits ultimately concluded that FWISD had "'erroneously over-reported days of attendance' and made a monetary adjustment" of approximately $18,000 to FWISD's funding; several administrators, including the principal of the school at which Palazzolo had worked, subsequently either resigned or retired. 498 S.W.3d at 678 n.3.

3

upon six grounds that were unrelated to his reports of wrongdoing." *Id.* at 678 & n.2. The Board voted 6 to 3 to notify him of his proposed termination. *Id.*

On October 28, 2010, the Board informed Palazzolo, in a four-page letter bearing the memo line "Notice of Proposed Termination of Employment Contract," that it would consider the proposal to discharge him from his employment with FWISD "subject to [his] statutory rights to protest and to request a hearing," under education code sections 21.211 and 21.253. The Board informed him that if he wished to protest "this proposed action to terminate [his] employment contract" and to request a hearing before the proposed action was taken, he had to "comply with the requirements specified by Section 21.253 of the Texas Education Code"—within 15 days of receiving the notice—by notifying the Board in writing and filing a written request for a hearing before a hearing examiner. *See Presidio ISD v. Scott*, 309 S.W.3d 927, 929 (Tex. 2010). Palazzolo opted to pursue his Chapter 21 rights to request a hearing on his proposed termination. *See* Tex. Educ. Code Ann. § 21.253; *see also Palazzolo IV*, 498 S.W.3d at 678.

As the supreme court explained in *Scott*, the procedure for a term-contract teacher to seek review of a proposed termination under Chapter 21 begins with the request for a hearing before a hearing examiner, whose recommendation may be adopted or rejected by the board. 309 S.W.3d at 929. The teacher may then appeal the board's decision to the Commissioner of Education, and either side may appeal the Commissioner's decision to a district court:

4

If a school district seeks to terminate a teacher, the teacher may request a hearing before a certified hearing examiner who develops the record, conducts a bench trial, and ultimately makes a written recommendation that includes proposed findings of fact, conclusions of law, and if the examiner so chooses, a proposal for granting relief. *See* Tex. Educ. Code §§ 21.251–.257. Next, the school district's board of trustees or board subcommittee considers the recommendation and may adopt, reject, or change the hearing examiner's conclusions of law or proposal for granting relief. *Id.* § 21.259.

If dissatisfied with the board's decision, the teacher may appeal to the Commissioner of Education. *Id.* § 21.301(a). The Commissioner "shall review the record of the hearing before the hearing examiner and the oral argument before the board of trustees or board subcommittee." *Id.* § 21.301(c). And, with exceptions not relevant here [procedural irregularities] the Commissioner shall consider the appeal "solely on the basis of the local record and may not consider any additional evidence or issue." *Id.* If the board terminates a teacher's contract, the Commissioner may not substitute his judgment for the board's unless its decision was "arbitrary, capricious, or unlawful or is not supported by substantial evidence." *Id.* § 21.303(b). Once the teacher and school district receive notice of the Commissioner's decision, *id.* § 21.304, a party may file a request for rehearing, *id.* § 21.3041(a). "Either party" may then appeal the Commissioner's decision to a district court. *Id.* § 21.307(a).

*Id.* (footnote omitted).

After the hearing examiner ruled in FWISD's favor on March 1, 2011,[4] and the Board adopted the examiner's recommendation a week later, Palazzolo appealed to the Commissioner, who reversed the hearing examiner's decision for procedural irregularities. *Palazzolo IV*, 498 S.W.3d at 678; *see* Tex. Educ. Code Ann. § 21.303(b), (c). In his June 29, 2011 decision, the Commissioner gave the Board two options: (1)

---

[4]The hearing examiner's March 1, 2011 amended decision reflects that he considered whether Palazzolo had established causation for a Whistleblower claim.

hold a new hearing or (2) "pay [Palazzolo] any back pay and employment benefits from the time of termination until the time [he] would have been reinstated and one year's salary from the date [he] would have been reinstated." *See* Tex. Educ. Code Ann. § 21.304(e), (f). The Commissioner also identified the date full compensation was to be tendered to Palazzolo as "[t]he date [he] would have been reinstated."

> On July 25, 2011, FWISD sent Palazzolo the following letter,
>
> Pursuant to the June 29, 2011, Decision of the Commissioner on Motion for Rehearing, enclosed with this letter is a check payable to you in the amount of eighteen thousand, one hundred fourteen dollars and sixteen cents ($18,114.16). This check covers your salary and benefits minus applicable deductions from March 9, 2011, until July 15, 2011, and provides the back pay and benefits as outlined in the Decision of the Commissioner on Motion for Rehearing referenced above. The enclosed check is your final check for the 2010-2011 school year.
>
> The first paycheck for the 2011-2012 school year will be issued to employees on September 28, 2011.

In the meantime, FWISD unsuccessfully appealed the Commissioner's decision to the district court. *See id.* § 21.307. FWISD's appeal of the district court's decision to this court was dismissed in March 2012. *Palazzolo I*, 2012 WL 858632, at *1.

> The general timeline of events relevant to this appeal, therefore, is as follows:
>
> **August 9, 2010:** Palazzolo files his complaint with the TEA. *Palazzolo IV*, 498 S.W.3d at 678.
>
> **October 26, 2010:** FWISD Board votes to notify Palazzolo of his proposed termination. *Id.*
>
> **October 28, 2010:** FWISD Board sends "Notice of Proposed Termination of Employment Contract" to Palazzolo, referencing his right to protest and to request a hearing under Chapter 21 and providing

6

a 15-day deadline to notify the Board of such request. Palazzolo complies with this deadline.

**March 1, 2011:** The hearing examiner rules in FWISD's favor.

**March 8, 2011:** The Board adopts hearing examiner's decision.

**March 22, 2011:** Palazzolo appeals to the Commissioner.

**May 10, 2011:** The Commissioner reverses the hearing examiner's decision.

**June 29, 2011:** On rehearing, the Commissioner restates his original decision and clarifies FWISD's two options.

**July 15, 2011:** Per FWISD's July 25, 2011 letter and the Commissioner's order, we infer that this would have been Palazzolo's reinstatement date.

**July 25, 2011:** FWISD complies with part of one of the Commissioner's two options while appealing the Commissioner's decision, paying Palazzolo back pay and benefits of $18,114.16, and states in its letter to him that the "first paycheck for the 2011-2012 year will be issued to employees on September 28, 2011."

**February 14, 2012:** At its Board meeting, the FWISD Board votes to pay Palazzolo a year's salary. *See* Tex. Educ. Code Ann. § 21.304(f).

**February 17, 2012:** FWISD sends a letter to Palazzolo's attorney enclosing checks for $10,740.87 and $67,088.49, payable to Palazzolo, "as final payment in the above referenced matter" [Joseph Palazzolo vs. Fort Worth ISD, Docket No. 038-R2-0311]. This letter contained no other explanation.

**February 22, 2012:** FWISD files a motion to dismiss its appeal in this court.

**February 23, 2012:** Palazzolo files a grievance with FWISD on a FWISD "Employee Complaint Statement Form" that references "Board

Policy DGBA (LEGAL) and (LOCAL)."[5]  Chapter 21 complaints about the proposed nonrenewal or proposed termination of an employee's term contract are included in the DGBA (LOCAL) exceptions, but the policy specifically references Whistleblower complaints, which "may be made to the Superintendent or designee beginning at Level Two."  On the form grievance, Palazzolo checks all of the levels—Level 1, Level 2 ("Appeal of Level 1 Decision"), and Level 3 ("Appeal of Level 2 Decision").[6]

**February 28, 2012:**  FWISD sends a letter directly to Palazzolo stating that the FWISD Board had voted to pay him a year's salary as set forth in the Commissioner's decision and referencing the two checks he had been issued to cover his salary through February 17, 2012, with applicable deductions ($10,740.87), and a full year's salary with applicable deductions ($67,088.49).  The letter further stated that the $67,088.49 was his "final check from the District with regard to [his] employment with Fort Worth ISD" and that his FWISD benefits would end the next day, on February 29, 2012.

**February 29, 2012:**  FWISD sends a letter to Palazzolo, acknowledging his February 23 grievance and informing him that the "DGBA (LOCAL)

---

[5]Board Policy DGBA (LOCAL), entitled "Personnel-Management Relations, Employee Complaints/Grievances," is used for all employee complaints not listed in the exceptions section of the policy, and it does "not require a full evidentiary hearing or 'mini-trial' at any level."

[6]In his grievance, Palazzolo states,

On February 14, 2012, the FWISD voted to end the administrative proceedings in my case and pay me one year's salary.  The Board never indicated I was terminated.  Some have suggested this vote may have resulted in the end of my employment with FWISD.  To the extent FWISD has ended my employment, I am appealing because such termination is in retaliation for my whistleblower activity.  I hope my employment has not ended, but I am filling this in an abundance of caution.

8

policy" required him to attach the supporting documents he referenced in his grievance.[7]

**March 1, 2012:** Palazzolo files with the Commissioner a "petition of review of termination by Fort Worth Independent School District," complaining that he should be reinstated absent a clear intent to terminate his employment.[8]

**March 14, 2012:** This court grants FWISD's motion to dismiss and dismisses FWISD's appeal of the district court's ruling and the Commissioner's 2011 decision. *Palazzolo I*, 2012 WL 858632, at *1.

**March 22, 2012:** Palazzolo sends a letter to the FWISD superintendent asking for his grievance hearing to be scheduled and pointing out that the February 14, 2012 FWISD Board vote did not indicate that he was being terminated but that after the vote, "someone within FWISD took steps to end [his] pay and benefits with FWISD," which was why he filed his grievance.

**April 19, 2012:** Palazzolo sends a follow-up letter to the FWISD superintendent, again asking for his grievance hearing to be scheduled.

**April 20, 2012:** FWISD sends Palazzolo a letter informing him that his February 23, 2012 grievance would be put on a schedule for a Level 2 hearing sometime between May 2 and May 15.

---

[7]In his grievance form, Palazzolo stated, "I would refer FWISD to the transcript of the hearing and subsequent appeals, for testimony and exhibits in support of my claims. Please notify me if you need a copy of same, but I believe you have them."

[8]In his petition, Palazzolo complains that it was unclear that his employment had been terminated and that FWISD did not have the option to avoid the new hearing by paying him a year's salary, arguing, "Clearly, the intent of the Legislature was to give a school district the option to pay one year's salary if the employee was reinstated permanently, not just reinstated pending a new hearing," and that he would be deprived of due process if the district could just buy its way out of holding a new hearing.

**April 20, 2012:** (Same day as above.) Palazzolo's petition for review is dismissed by the Commissioner for want of jurisdiction because Palazzolo was attempting to appeal a board's decision under education code section 21.304(f), not a decision to terminate his contract under section 21.259 or a decision to not renew his contract under section 21.208. According to the Commissioner, he had no jurisdiction over Palazzolo's claim since the issues Palazzolo raised had to have first been raised at the school district level through the school board's grievance process.[9]

**April 24, 2012:** FWISD sends Palazzolo a letter informing him that the superintendent would hear his complaint on May 9, 2012, at 1:30 p.m. We infer from the record that this hearing was rescheduled.

**May 1, 2012:** The parties unsuccessfully mediate the dispute.

**May 24, 2012:** FWISD sends Palazzolo a letter reciting that his Level 2 grievance hearing was scheduled for the next day, May 25, 2012, at 2:30 p.m.

**May 25, 2012:** Palazzolo's Level 2 grievance is heard by the FWISD superintendent. The superintendent conducts the Level 2 hearing under both the DGBA policy, which applies only to district employees, and the GF policy, which concerns complaints by members of the public.

**June 8, 2012:** FWISD sends Palazzolo a letter explaining the superintendent's conclusion after the Level 2 grievance hearing that there was no evidence of retaliation and advising Palazzolo, "Should you wish to appeal this decision, you may do so in compliance with the timelines set forth in Board Policy." In the letter, FWISD summarized

---

[9]*But cf. Tex. Comm'r of Educ. v. Solis*, 562 S.W.3d 591, 598, 600–02 (Tex. App.—Austin 2018, pet. filed) (stating that section 7.057 "does not require that the aggrieved person have participated in a hearing before the board, but only that the board have made a 'decision' or taken 'action'" and stating that while a party who fails to raise a particular complaint in accordance with the applicable local grievance policy will not have a record to present to the Commissioner, it does not necessarily follow that the Commissioner lacks jurisdiction).

facts pertinent to the Level 2 grievance hearing, listing his termination date as March 8, 2011—the date the Board adopted the hearing examiner's recommendation—and noting that the Commissioner had reversed that decision on May 10, 2011, and had given FWISD two options in his June 29, 2011 decision, which FWISD had then appealed to the district court, which dismissed the appeal. The letter further recited that FWISD had appealed that dismissal to this court before it moved for dismissal of its appeal.

**June 27, 2012:** FWISD sends Palazzolo a letter informing him that the Board would consider his appeal of the Level 2 decision at its July 17, 2012 meeting at 5:30 p.m. and attaching a copy of the "Procedures for Employee Grievance/Complaint Appeals."

**July 6, 201**2: Palazzolo files his Whistleblower lawsuit. *Palazzolo IV*, 498 S.W.3d at 678.[10] While Palazzolo prevailed at trial on his Whistleblower claim, in 2016 we reversed the trial court's judgment based on jury charge error. *See id.* at 677, 686.[11]

On remand, FWISD filed a plea to the jurisdiction, arguing that the trial court lacked jurisdiction because Palazzolo had filed his Whistleblower lawsuit more than 30 days after February 14, 2012, which FWISD identified as the conclusion of the

---

[10]In his lawsuit, Palazzolo sought damages for lost wages, lost employment benefits, pecuniary losses, emotional pain and suffering, mental anguish, inconvenience, and loss of enjoyment of life; attorney's fees; and reinstatement to an assistant principal position or comparable position as if he had never been suspended or terminated. In his petition, he asserted that he had given FWISD "ample opportunity to review his whistleblower allegations and to do the right thing regarding [his] employment with [FWISD]."

[11]Shortly thereafter, FWISD filed a motion to dismiss for want of jurisdiction, which we denied, and a motion for rehearing of its motion to dismiss, which we also denied. In the motion, FWISD made the same arguments that it raises in this appeal. The supreme court requested briefing on the merits after FWISD filed a petition for review of our denial of its motion to dismiss, but the court ultimately denied the petition on December 15, 2017.

11

Chapter 21 grievance process. Palazzolo responded by pointing out that between February 14, 2012, and his filing suit on July 6, 2012, FWISD and its attorneys fully participated in FWISD's Level 2 internal grievance process by which he challenged his actual—no longer proposed—termination. And he further pointed out the contradictory position that FWISD's own policies take on the matter. While FWISD's policies direct teachers to the Chapter 21 process to challenge a proposed contract termination,[12] they refer to the district's internal Level 2 grievance procedures as the proper vehicle for Whistleblower claims.[13] Palazzolo also referred the trial court to *Palazzolo II*, in which FWISD had successfully argued that the trial court had no jurisdiction over his earlier attempt at a Whistleblower lawsuit based on other

[12]FWISD's DFBA (LEGAL) policy, entitled "Term contracts suspension/termination during contract," references, inter alia, (1) the grounds for terminating a term contract and discharging a term contract employee at any time under education code section 21.211(a) and (2) the 15-day time limit to request a hearing before an independent hearing examiner after receiving notice of the proposed termination, under education code sections 21.251 and 21.253. Following the provisions regarding hearing requests, the reference "See DFD" appears. FWISD's DFD (LEGAL) policy, entitled "Termination of Employment Hearings Before Hearing Examiner," parallels some of the provisions set out in Chapter 21.

[13]FWISD's DG (LEGAL) policy specifically addresses Whistleblower claims and states that "[b]efore suing, an employee must initiate action under the District's grievance policy or other applicable policies concerning suspension or termination of employment or adverse personnel action." Under the provision regarding legal actions, the policy includes the statement "See DGBA regarding grievance procedures." As set out above, FWISD's DGBA (LOCAL) policy sets out exceptions for claims arising from the proposed nonrenewal or proposed termination of a term contract (Chapter 21), as well as exceptions for a variety of other claims, but it otherwise provides for "an orderly process for the prompt and equitable resolution of all employee complaints."

FWISD actions because he had failed to exhaust the internal grievance procedures as required by FWISD's policies. 2014 WL 69889, at *1–2, *5–6 (holding that as to his transfer and appraisal-report claims, Palazzolo did not properly "initiate" FWISD's grievance process under government code section 554.006 when he filed Level 1, Level 2, and Level 3 grievances and then "actively circumvented FWISD's efforts to redress the complained-of conduct by advising the Board that he had no dispute with his transfer and appraisal report" before bringing suit).

Both parties attached the FWISD policies that were in effect at the time of Palazzolo's proposed termination. We discuss those policies in our analysis below.

At the June 8, 2018 hearing on its plea to the jurisdiction, FWISD presented its theory—first raised in its August 2016 motion to dismiss in this court after we issued our *Palazzolo IV* opinion—that Chapter 21 was the exclusive administrative remedy for a teacher who has been terminated and wants to file a Whistleblower claim. Thus, FWISD argued, because Palazzolo did not file his lawsuit within thirty days of February 14, 2012, limitations barred his lawsuit. Palazzolo responded that FWISD's own policies made a clear distinction between challenging the proposed termination of a contract, covered by Chapter 21, and challenging a final termination, which required a "separate internal grievance and appeal procedure as a prerequisite to filing a Whistleblower action."

The trial court denied FWISD's plea. This appeal followed.

## III. Limitations

According to FWISD, Palazzolo exhausted the Chapter 21 grievance process on February 14, 2012, the date the Board voted to pay him a year's salary,[14] and then had 30 days within which to file his Whistleblower suit. FWISD claims that since he failed to do so, the trial court lacked jurisdiction.[15] Palazzolo responds that FWISD's own policies expressly direct teachers to the Chapter 21 appeals process to challenge a *proposed* contract termination and to FWISD's internal grievance policies to challenge a *completed* contract termination if the teacher wishes to file a Whistleblower Act lawsuit. He further argues that no case or statute declares that the Chapter 21 process "is the exclusive or only grievance or appeal procedure allowed in a Whistleblower Act case."

### A. Subject Matter Jurisdiction

Governmental immunity implicates a trial court's subject matter jurisdiction with regard to immunity from suit. *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011) (explaining that governmental immunity is comprised of immunity from both

---

[14]In his "Employee Complaint Statement Form," Palazzolo states, "On February 14, 2012, the FWISD voted to end the administrative proceedings in my case and pay me one year's salary. The Board never indicated I was terminated."

[15]FWISD refers us to *Boswell v. Ector County ISD*, No. 11-15-00013-CV, 2016 WL 1443606 (Tex. App.—Eastland Apr. 7, 2016, pet. denied) (mem. op.), *El Paso ISD v. Kell*, 465 S.W.3d 383 (Tex. App.—El Paso 2015, pet. denied), and *Powers v. Northside ISD*, 662 F. App'x 306 (5th Cir. 2016), to support its argument that Palazzolo's Chapter 21 process was his exclusive method to initiate the grievance process required as a statutory prerequisite to his Whistleblower Act claim. We review these cases below in our analysis.

suit and liability but that while immunity from liability merely protects the governmental entity from a judgment, immunity from suit deprives the court of jurisdiction over a suit against the entity unless the legislature has expressly consented to suit); *Farr v. Arlington ISD*, No. 02-17-00196-CV, 2018 WL 3468459, at *2 (Tex. App.—Fort Worth July 19, 2018, no pet.) (mem. op.).  Subject matter jurisdiction is an issue that may be raised for the first time on appeal.  *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993).  Subject matter jurisdiction cannot be waived by the parties.  *Id.*

Whether a trial court has subject matter jurisdiction is a legal question that we review de novo.  *Farr*, 2018 WL 3468459, at *2 (citing *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011)).  A party suing a governmental entity must establish the state's consent to suit, which may be alleged by reference to a statute or to express legislative permission.  *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).  "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."  Tex. Gov't Code Ann. § 311.034; *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 515 (Tex. 2012) ("[A] statutory prerequisite to suit, whether administrative (such as filing a charge of discrimination) or procedural (such as timely filing a lawsuit) is jurisdictional when the defendant is a governmental entity.").

15

**B. Texas Whistleblower Act**

The Texas Whistleblower Act contains an express waiver of immunity. *Palazzolo II*, 2014 WL 69889, at *3 (citing Tex. Gov't Code Ann. § 554.0035).[16]  But to enable a governmental entity to proactively resolve disputes before incurring the expense of litigation, a limitations period was also created, giving the governmental employer the opportunity to investigate and correct its errors before a lawsuit is filed. *See* Tex. Gov't Code Ann. §§ 554.005–.006; *Palazzolo II*, 2014 WL 69889, at *3.

Government code sections 554.005 and 554.006 set out the twists and turns of the Whistleblower Act limitations period.  Under these provisions:

- The public employee must bring the lawsuit "not later than the 90th day after the date on which the alleged violation of this chapter (1) occurred; or (2) was discovered by the employee through reasonable diligence."  Tex. Gov't Code Ann. § 554.005.

- But before the public employee may bring the lawsuit, he must "initiate action under the grievance or appeal procedures of the employing . . . governmental entity relating to *suspension or termination of employment or adverse personnel action*" and invoke "the *applicable* grievance *or* appeal procedures" not later than the 90th day after the date on which the alleged violation of the Whistleblower Act occurred or was discovered by the employee through reasonable diligence.  *Id.* § 554.006(a), (b) (emphasis added).

---

[16]Government code section 554.0035 states,

> A public employee who alleges a violation of this chapter ["Protection for Reporting Violations of Law"] may sue the employing state or local governmental entity for the relief provided by this chapter.  Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

Tex. Gov't Code Ann. § 554.0035.

- Whether time used by the employee in acting under the grievance or appeal procedure may be excluded from section 554.005's 90-day period depends on whether a "final decision" is rendered before the 61st day after the date the grievance or appeal procedures are initiated. *Id.* § 554.006(c). "Final decision" is not defined in the Whistleblower Act. *See id.* § 554.001 ("Definitions").

- If a final decision is not rendered before the 61st day after the date procedures are initiated under the grievance or appeal procedures, the employee may elect either to exhaust the applicable procedures and sue "not later than the 30th day after the date those procedures are exhausted" or terminate the grievance or appeal procedures, in which event he must sue within the time remaining under section 554.005. *Id.* § 554.006(d).

This process is illustrated below:



## C. Education Code Provisions

We begin our review here by acknowledging that the legislature knows how to create a mandatory and exclusive requirement through the use of words such as "must" and "shall." Tex. Gov't Code Ann. § 311.016(1)–(3) (explaining that while "may" creates discretionary authority or grants permission or a power, "shall" imposes a duty, and "must" creates or recognizes a condition precedent); *Moses v. Fort Worth ISD*, 977 S.W.2d 851, 853 (Tex. App.—Fort Worth 1998, no pet.) ("We

18

conclude that the word 'must' as used in section 21.301 of the education code creates a mandatory requirement that the school district file the local record not later than the 20th day after the petition for review is filed."); *see also City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 580 (Tex. 2018) (stating that statutory construction is a legal question for courts, whose goal is to ascertain and to give effect to the legislature's intent as expressed by the statute's language). For example, section 21.204 of the education code, "Term Contract," states that a teacher's term contract "*must* be in writing and *must* include the terms of employment prescribed by this subchapter," that the school board "*may* include in the contract other provisions that are consistent with this subchapter," and that the board "*shall* provide each teacher" with a copy of the contract and, on the teacher's request, a copy of the board's employment policies. Tex. Educ. Code Ann. § 21.204(a), (b), (d) (emphasis added).

We also note that local management and control of public schools is a primary and longstanding legislative policy manifested throughout the statutes concerning education. *Peaster ISD v. Glodfelty*, 63 S.W.3d 1, 5 (Tex. App.—Fort Worth 2001, no pet.); *see Clint ISD v. Marquez*, 487 S.W.3d 538, 545 (Tex. 2016) (stating that school districts have the primary responsibility for implementing the state's system of public education and ensuring student performance in accordance with the education code) (citing Tex. Educ. Code Ann. § 11.002); *see also* Tex. Educ. Code Ann. § 7.003 ("An educational function not specifically delegated to the agency or the [TEA] board under this code is reserved to and shall be performed by school districts or open-

19

enrollment charter schools."), § 11.151(b) (providing that the trustees of an independent school district "have the exclusive power and duty to govern and oversee the management of the public schools of the district," that all powers and duties not specifically delegated by statute to the agency or State Board of Education are reserved for the trustees, and that TEA may not substitute its judgment for the lawful exercise of those powers and duties by the trustees). Under this statutory scheme, a school board is the ultimate interpreter of its policies, subject to the due process limits established by the legislature in its provisions for administrative and judicial review. *Montgomery ISD v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000); *see* Tex. Educ. Code Ann. § 21.002(c) (requiring each school board to establish a policy designating specific positions of employment or categories of positions based on considerations such as length of service to which continuing contracts or term contracts apply), § 21.203 (mandating that school board employment policies require a written evaluation of each teacher at least annually that must be considered before making a contract nonrenewal decision and stating that such employment policies must list reasons for nonrenewal); *Glodfelty*, 63 S.W.3d at 5 (describing substantive limits placed by legislature on school district's ability to nonrenew teacher's term contract); *see also Seifert v. Lingleville ISD*, 692 S.W.2d 461, 463 (Tex. 1985) (reversing appellate court's judgment when school district attempted to nonrenew teacher's term contract based on reason not listed in its published policy).

Problems often arise when a party fails to exhaust the administrative remedies set out in Chapter 21 or in a school district's policies prior to filing suit. *See Ysleta ISD v. Griego*, 170 S.W.3d 792, 797 (Tex. App.—El Paso 2005, pet. denied) (holding that trial court lacked jurisdiction when, regarding nonrenewal of his contract, counselor failed to appeal school board's adoption of hearing examiner's recommendation to the Commissioner under Chapter 21). But exhaustion is only required for complaints that the legislature has authorized the Commissioner to resolve, i.e., claims predicated on matters within the Commissioner's exclusive jurisdiction. *McIntyre v. El Paso ISD*, 499 S.W.3d 820, 823–24 (Tex. 2016) ("In short, aside from employment-contract disputes, the Education Code limits administrative appeals to cases where a person is aggrieved by Titles 1 or 2 of the Education Code or a school board's violation of them."). Thus, whether a claimant must exhaust administrative remedies depends on the nature and context of the claims asserted. *Id.* at 825; *Larsen v. Santa Fe ISD*, 296 S.W.3d 118, 123 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

In determining the nature and context of the claims, we must focus on (1) whether the plaintiff was a contractual or an at-will employee; and (2) whether he asserts claims based on the Texas Labor Code, the Texas Education Code, the Texas Commission on Human Rights Act, the Texas or United States constitutions, or on some other basis. *See Larsen*, 296 S.W.3d at 123–24. With regard to the Whistleblower Act, the supreme court has recognized that this act "has its own statutory remedies and procedures that do not require exhaustion with the

21

Commissioner under the Education Code." *Canutillo ISD v. Farran*, 409 S.W.3d 653, 657 (Tex. 2013) (explaining that Farran had no cognizable Whistleblower Act claim and that to the extent he sought relief for common law breach of contract, he had failed to exhaust his administrative remedies under education code section 7.057(a)(2)(B)).

Under the education code, when exhaustion is required, there are two primary methods to appeal to the Commissioner to obtain a ruling that is then appealable to a district court. The claimant may either appeal to the Commissioner through section 7.057 or he may invoke his rights to an administrative hearing under Chapter 21. *See* Tex. Educ. Code Ann. §§ 7.057, 21.301.

### 1. Section 7.057

Under section 7.057, a person may appeal to the Commissioner if he or she has been "aggrieved" by (1) the "school laws of this state," defined as Titles 1 and 2 of the education code and the rules adopted thereunder, or (2) the actions or decisions of any school district board or trustee that violate the school laws of this state or a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee. *Id.* § 7.057(a). Section 7.057 specifically excepts "a case to which Subchapter G, Chapter 21, applies." *Id.* § 7.057(e)(1).

Section 7.057 does not permit, much less require, administrative appeals when a person is allegedly aggrieved by violations of laws other than the state's school laws.

22

*McIntyre*, 499 S.W.3d at 821 (reversing appellate court's judgment dismissing parents' claims for failure to exhaust administrative remedies with regard to their constitutionality complaints and holding that whether parents' constitutional rights were violated is a question for the courts, not the Commissioner, to decide). However, although section 7.057(a) provides that a person "may" appeal to the Commissioner, the supreme court has interpreted the statute to require a person who chooses to appeal to first seek relief through the administrative process when it applies to complaints that the legislature has authorized the Commissioner to resolve. *Marquez*, 487 S.W.3d at 545–46; *Farran*, 409 S.W.3d at 657 ("School district employees like Farran, alleging a breach of an employment contract where facts are in dispute, generally must exhaust administrative remedies by bringing an appeal to the Commissioner."); *Cedar Hill ISD v. Gore*, No. 05-16-00460-CV, 2017 WL 2981970, at *3 (Tex. App.—Dallas July 13, 2017, pet. denied) (mem. op.) ("Non-renewal or breach of a school district employee's contract involves the 'school laws of this state.'" (quoting *Larsen*, 296 S.W.3d at 128)).

### 2. Chapter 21

Chapter 21 of the education code is entitled "Educators" and covers everything associated therewith, from teacher certification to appraisals, incentives, staff development, and various residency and innovation programs. *See* Tex. Educ. Code Ann. §§ 21.001–.806. Principals are included within the definition of "teacher." *See id.* § 21.201(1). Section 21.002, "Teacher Employment Contracts," states that a school

district shall employ each principal, among others, under a probationary contract (Subchapter C), a continuing contract (Subchapter D), or a term contract (Subchapter E), and that each school board shall establish a policy for continuing contracts and term contracts. *Id.* § 21.002(a), (c).

Palazzolo was starting the second year of a two-year term contract set to expire at the end of the 2010–2011 school year when he sent his complaint to TEA in August 2010 and received notice of FWISD's proposal to terminate his employment in October 2010. *Palazzolo IV*, 498 S.W.3d at 678; *see* Tex. Educ. Code Ann. § 21.201(3) (defining "term contract" as "any contract of employment for a fixed term between a school district and a teacher"). Thus, we examine Chapter 21's provisions applicable to term contracts.

Subchapter E contains separate provisions addressing the ending of a term contract, depending on the circumstances under which the contract ends, i.e., whether the term contract ends through "nonrenewal" or "termination or suspension." *Compare* Tex. Educ. Code Ann. § 21.206 ("Notice of Contract Renewal or Nonrenewal"), *with id.* § 21.211 ("Termination or Suspension").

With regard to nonrenewal, a board has 10 days before the last day of instruction in the school year to notify each teacher whose contract is about to expire if it does not intend to renew the teacher's contract.[17] *Id.* § 21.206(a). Section 21.207

_____

[17]The language of the statute is actually cast in the disjunctive, providing that the board should notify the teacher, in writing, whether it proposes "to renew or not

sets out the procedure for a teacher to challenge the proposed nonrenewal and to obtain a hearing, *id.* § 21.207; section 21.208 provides for timely notification to the teacher of the school board's decision, with or without a hearing, regarding the renewal of his or her contract, *id.* § 21.208; and section 21.209 provides for an appeal to the Commissioner following an adverse decision.[18]  *Id.* § 21.209.

In contrast, a board may terminate a term contract and discharge a teacher at any time for good cause as determined by the board.  *Id.* § 21.211(a).  Upon this occurrence, the provisions under Subchapter F, "Hearings Before Hearing Examiners," come into play.[19]  *See id.* § 21.251(a)(2) (providing that Subchapter F applies if a teacher requests a hearing after receiving notice of a proposed decision to terminate his or her term contract before the end of the contract period).  Subchapter F sets out the various deadlines and due process protections involved in a hearing before a hearing examiner, and the deadlines after the hearing examiner makes his or

---

renew" the teacher's contract.  *See* Tex. Educ. Code Ann. § 21.206(a).  Failure to give the required timely notice results in automatic renewal of the contract.  *Id.* § 21.206(b) (providing that failure to give the required timely notice to the teacher "constitutes an election to employ the teacher in the same professional capacity for the following school year").

[18]Subchapter G sets out the procedure to appeal the board's decision on the hearing examiner's recommendation to the Commissioner, *see id.* §§ 21.301–.3041, and the deadline to appeal the Commissioner's decision to a district court.  *See id.* § 21.307.

[19]The provisions of Subchapter F do not apply to a decision not to renew a teacher's term contract unless a board has decided to use the process in Subchapter F for that purpose.  *Id.* § 21.251(b)(2).

her recommendation on the board's proposed action, *see id.* §§ 21.252–.259, followed by the Subchapter G procedure to appeal to the Commissioner and then to the district court. *Id.* § 21.307.

Nothing in the plain language of Chapter 21 states that the administrative remedies for teachers with regard to the proposed termination of term contracts are exclusive as compared to board policies, many of which incorporate the same provisions. Rather, for specific instances, Chapter 21 merely sets out certain due process minimums and exceptions for certain circumstances. That is, while a teacher may be required to pursue administrative remedies prior to filing suit with regard to the proposed termination or nonrenewal of his or her contract, there is nothing explicitly stated in Chapter 21 that makes it the only available method of pursuing administrative relief as long as the school board has complied with the minimum due process protections. *Compare id.* § 21.251(a)(2) ("[S]ubchapter [F] applies *if* a teacher requests a hearing after receiving notice of the proposed decision" to terminate his term contract before the end of the contract period (emphasis added)), *with id.* § 21.159(a) ("If the teacher [on a continuing contract] desires to protest the proposed action under Section 21.156 [discharge for good cause or suspension without pay for good cause] or Section 21.157 [necessary reduction in personnel], the teacher *must* notify the board of trustees in writing not later than the 10th day after the date the teacher receives the notice under Section 21.158." (emphasis added)), *and id.* § 21.058(c), (c-1), (e) (stating that a school district shall terminate the employment of a

26

person whose teaching certificate has been revoked when he or she is convicted or placed on deferred adjudication community supervision for sex-related offenses or felony offenses under penal code title 5 and that the school district's act is "not subject to appeal under this chapter, and the notice and hearing requirements of this chapter do not apply to the action").

## D. FWISD Policies

Reading much like alphabet soup, the FWISD policies at issue here are: DBGA (LOCAL), DFBA (LEGAL), DFD (LEGAL), and DG (LEGAL).

### 1. DGBA (LOCAL)

FWISD's DGBA (LOCAL) policy, "Personnel-Management Relations, Employee Complaints/Grievances," lists its purpose as providing an orderly process for the prompt and equitable resolution of all employee complaints other than those listed in the exceptions portion of the policy. Among the listed exceptions to the DGBA (LOCAL) policy are complaints arising from the proposed nonrenewal of a term contract issued under Chapter 21 and complaints arising from the proposed termination of an employee on a term contract issued under Chapter 21 during the contract term.[20] For "complaints arising from the proposed nonrenewal of a term

---

[20]Other exceptions include complaints alleging discrimination (Title IX, VII, ADEA, or section 504); complaints alleging certain forms of harassment (harassment by a supervisor, violations of Title VII); complaints concerning retaliation relating to discrimination and harassment; complaints concerning instructional materials; complaints concerning a commissioned peace officer who is a FWISD employee; and

contract issued under Chapter 21 of the Education Code," the policy simply states "See DFBB."[21] For "complaints arising from the proposed termination . . . of an employee on a . . . term . . . contract issued under Chapter 21 of the Education Code during the contract term," the policy states, "See DFAA, DFBA, or DFCA, respectively."

The policy further provides that employees shall not bring separate or serial complaints arising from any event or series of events that have been or could have been addressed in a previous complaint. And it specifically mentions Whistleblower complaints, stating,

> Whistleblower complaints shall be filed within the time specified by law and may be made to the Superintendant or designee beginning at Level Two. Time lines for the employee and the District set out in this policy may be shortened to enable the Board to make a final decision within 60 calendar days of the initiation of the complaint.

This provision is followed by the reference, "See DG(LEGAL)."

### 2. DG (LEGAL)

FWISD's DG (LEGAL) policy specifically addresses Whistleblower protection and states that "[b]efore suing, an employee must initiate action under the District's grievance policy or other applicable policies concerning suspension or termination of

---

complaints arising from the suspension of pay, demotion, or termination from employment of an at-will employee. Each exception lists a different policy.

[21]The DFBB (LOCAL) policy sets out 44 reasons for proposed nonrenewal of a term contract.

28

employment or adverse personnel action." *See* Tex. Gov't Code Ann. § 554.006(a) ("A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.").

Under the policy—paralleling the statutory language in government code section 554.006(b)—the employee must invoke the grievance procedure not later than the 90th day after the date on which the "alleged suspension, termination, or other adverse employment action occurred or was discovered by the employee through reasonable diligence." If the board does not render a final decision before the 61st day after grievance procedures are initiated, the employee may elect to either exhaust the district's grievance procedures and sue not later than the 30th day after the date the procedures are exhausted or terminate the district's grievance procedures and sue within the timelines established by government code sections 554.005 and 554.006.

Under the provision regarding legal actions, the policy includes the statement "See DGBA regarding grievance procedures."

### 3. DFBA (LEGAL)

FWISD's DFBA (LEGAL) policy, "Term contracts suspension/termination during contract," references, inter alia, the grounds for terminating a term contract and discharging a term contract employee at any time under education code section 21.211(a) and the 15-day time limit to request a hearing before an independent hearing examiner after receiving notice of the proposed termination under education code

sections 21.251 and 21.253. It also references back pay for the period of suspension without pay if the suspension does not lead to discharge under education code section 21.211(c). Following the provisions with regard to requests for hearings, the reference "See DFD" appears.

### 4. DFD (LEGAL)

FWISD's DFD (LEGAL) policy, "Termination of Employment Hearings Before Hearing Examiner," parallels some of the provisions set out in education code sections 21.255 ("Hearings Before Hearing Examiner"), 21.256 ("Conduct of Hearing"), 21.257 ("Recommendation of Hearing Examiner"), 21.258 ("Consideration of Recommendation by Board of Trustees or Board Subcommittee"), 21.259 ("Decision of Board of Trustees or Board Subcommittee"), 21.260 ("Recording of Board Meeting and Announcement"), and some portions of section 21.301 ("Appeal to Commissioner"). The policy also states that the hearing process does not apply to decisions not to renew a term contract "unless the Board has adopted this process for nonrenewals." It also establishes a deadline for the board to announce a decision with regard to a hearing examiner's recommendations, providing that the board or subcommittee shall announce its decision not later than the 10th day after the date on which the board has a meeting to consider the hearing examiner's recommendation. Additionally, it provides that the decision's announcement must include findings of fact and conclusions of law and that the Board may adopt, reject, or change the hearing examiner's conclusions of law or proposal for granting relief.

After setting forth the required contents of the record of the proceedings, the DFD policy makes apparent reference to the Texas Administrative Code by including the citation "19 TAC 157.1072(e)." *See* 19 Tex. Admin. Code § 157.1072(e) (listing the required contents of the record of the proceedings before the independent hearing examiner or board of trustees).

Equally significant as what the DFD (LEGAL) policy provides is what the policy does not provide. It does not set out the remainder of the administrative exhaustion procedures under Chapter 21. It fails to include any deadline to appeal to the Commissioner found in section 21.301(a); a provision for the Commissioner's consideration of procedural irregularities by the hearing examiner provided under section 21.302; the effect of the Commissioner's determination of procedural irregularities and other bases for setting aside a board's judgment included in section 21.303(a)–(c); the deadline to appeal the Commissioner's decision included in section 21.304(b); the relief the Commissioner can order provided for in section 21.304(e) and (f); the deadline for a rehearing of the Commissioner's decision set forth in section 21.3041; or—finally—the provision for judicial appeals found in section 21.307.

### 5. Summary

Based on the above, with regard to his complaint about FWISD's proposed termination of his term contract employment, Palazzolo was required to follow the DFBA/DFD policies (which incorporated relevant portions of Chapter 21), and he did so. The question before us now is whether a new complaint arose at the

31

conclusion of that process and, if so, which grievance or appeal policy sufficed to "initiate action" for purposes of his Whistleblower claim. *See* Tex. Gov't Code Ann. § 554.006(a).

**E. FWISD's Cases**

FWISD relies primarily on three cases to support its contention that Palazzolo exhausted his applicable grievance procedure in February 2012 and thus was late in filing his petition in the district court, depriving the district court of jurisdiction. We are not bound by the holdings in any of the three cases cited; we also disagree with the reasoning in the first and FWISD's construction of the third, and we distinguish the second on the basis of both factual differences and legal analysis.

### 1. *Boswell v. Ector County ISD*

*Boswell* involved a pro se appeal of a rule 91a dismissal.[22] 2016 WL 1443606, at *1. After Boswell amended his pro se pleadings several times over the course of two years—ultimately including a claim for wrongful termination under the Whistleblower Act—the trial court granted the school district's rule 91a motion to dismiss, observing that Boswell had failed to set out anything in his claims that the court could "even

---

[22]We do not address the procedural contortions involved in *Boswell* except to note that rule 91a does not state any exceptions to the requirement that the motion to dismiss be granted or denied within 45 days of its filing. *Compare* Tex. R. Civ. P. 91a.3(c) (stating that a motion to dismiss "must be granted or denied within 45 days after the motion is filed"), *with Boswell*, 2016 WL 1443606, at *2 (stating that by rule 11 agreement, the parties agreed to a continuance on the dismissal hearing and "to a waiver of the time requirement under Rule 91a").

comprehend or work with . . . it's just not there."[23]  *Id.* at *1–2.  The court noted that Boswell's live pleading was approximately 77 pages long—not counting the documents attached as exhibits—and that numerous extraneous matters and causes of action for which he lacked standing were interwoven with the school district's alleged improprieties, some of which were alleged to have occurred before Boswell was hired. *Id.* at *1–3.

Boswell's appeal required the court to examine his pleadings, which failed to affirmatively show the trial court's jurisdiction since "[n]oticeably absent from his petition are allegations that he pursued a 'Chapter 21 hearing' under the Education Code with the Commissioner of Education" with regard to the "termination *and* nonrenewal" of his contract.  *Id.* at *1, *3 (emphasis added) (citing *Kell*, 465 S.W.3d at 387–88).  *But compare* Tex. Educ. Code Ann. §§ 21.206–.209 (setting out procedure to complain of proposed nonrenewal of term contract), *with id.* §§ 21.211, .251(a)(2), (b)(2), .253–.260 (setting out procedure to complain of proposed termination of term contract).

---

[23]Boswell was no stranger to unsuccessful pro se litigation, having sued Texas Christian University, TCU's Board of Trustees, and a federal district judge, among others, in a series of lawsuits (all of which were dismissed) between 1998 and 2014. *See Boswell v. Tex. Christian Univ.*, No. 4:14-cv-0330-0, 2014 WL 4650023, at *1 (N.D. Tex. Sept. 16, 2014), *appeal dism'd*, No. 14-11089 (5th Cir. Jan. 27, 2015); *see also Boswell v. Tex. Christian Univ.*, No. 14-11113, 608 F. App'x. 291 (5th Cir. July 2, 2015), *cert. denied*, 136 S. Ct. 989 (2016).

The court concluded that because Boswell had failed to allege that he had initiated, much less exhausted, his administrative remedies, the trial court had no jurisdiction over his breach of contract claim or his Whistleblower claim. *Boswell*, 2016 WL 1443606, at *3 ("Appellant's . . . failure to plead the initiation of an administrative proceeding with the Commissioner of Education deprived the trial court of subject-matter jurisdiction to consider his whistleblower claim."). *But cf. Farran*, 409 S.W.3d at 657 (holding that to the extent Farran sought relief for common law breach of contract, he had failed to exhaust his administrative remedies available under education code section 7.057 but noting that the Whistleblower Act "has its own statutory remedies and procedures that do not require exhaustion with the Commissioner under the Education Code").

In reaching its decision in *Boswell*, the Eastland court relied on the El Paso court's opinion in *Kell*, which is discussed below, explaining that because the El Paso court had concluded that a Chapter 21 hearing with the commissioner is "'*possibly* the only way' under the Education Code for a term contract teacher to challenge a *proposed* termination," Boswell's claim was precluded because he had failed to do so. *Id.* (emphasis added) (quoting *Kell*, 465 S.W.3d at 387). As *Boswell*'s resolution appears to have been equally based on the appellate court's ruling that Boswell's pleadings had "no basis in fact because no reasonable person could believe the facts pleaded," and the opinion is laden with references to the pro se appellant's lack of knowledge or diligence with regard to the applicable legal standards, *Boswell* is distinguishable on its

34

facts.[24]  *Id.* at \*5.  Furthermore, because the legal analysis was not the result of robust

adversarial arguments, *see generally Barcroft v. Walton*, No. 02-16-00110-CV, 2017 WL

3910911, at \*5 n.11 (Tex. App.—Fort Worth Sept. 7, 2017, no pet.) (mem. op.)

(observing that pro se litigants rarely prevail because their lack of legal education or

training tends to lead them to critical mistakes of form and substance), and the

holding relied upon hypotheticals—the "possibility" of only one avenue of relief in

challenging a "proposed" termination, *see Boswell*, 2016 WL 1443606, at \*3, it is of

limited persuasiveness and applicability to the case before us.[25]  And while we respect

our sister courts' decisions, we are not bound by their precedent.  *Raymax Mgmt., L.P.*

---

[24]The court summarized its holding as follows:

> In summary, we have reviewed the entirety of the matters alleged by Appellant in his fourth amended pleading. We agree with the trial court's determination that Appellant's challenged pleading has no basis in law that would entitle Appellant to the relief that he seeks and no basis in fact because no reasonable person could believe the facts pleaded. Although Appellant used headings throughout his challenged pleading, the allegations set out below those headings are garbled, and different causes of action appear to be argued instead of the cause of action listed in the heading. Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). We conclude that Appellant's challenged pleading has no arguable basis in law or fact.

*Boswell*, 2016 WL 1443606, at \*5.

[25]Here, in contrast, the issues and arguments have been thoroughly developed by skilled attorneys through an adversarial process that has spanned almost a decade.

*v. SBC Tower Holdings LLC*, No. 02-16-00013-CV, 2017 WL 3821897, at *1 n.4 (Tex. App.—Fort Worth Aug. 31, 2017, pet. denied) (mem. op. on reh'g); *cf. Scoresby v. Santillan*, 287 S.W.3d 319, 324 (Tex. App.—Fort Worth 2009) ("It is well established that as an intermediate appellate court, we are bound by the pronouncements of the supreme court."), *aff'd*, 346 S.W.3d 546 (Tex. 2011). We decline to follow the holding in *Boswell*.

### 2. *El Paso ISD v. Kell*

*Kell* is more helpful to us, in that it included more analysis about the substantive process. 465 S.W.3d at 384. Kell had been an assistant principal on a term contract during some of the years giving rise to an El Paso ISD (EPISD) cheating scandal. *Id.* She was placed on administrative leave in the fall of 2012 in the aftermath of the superintendent's guilty plea to conspiracy to artificially inflate state and federal accountability scores to secure federal education funding. *Id.* A week before Christmas, the Board directed the interim superintendent to give Kell notice that she would be terminated and that her contract would not be renewed. *Id.* at 385. In the proposed termination order, EPISD alleged that Kell had participated in the former superintendent's cheating scheme. *Id.* Kell did not request a Chapter 21 administrative hearing to challenge her proposed termination, and a month later, EPISD notified her in writing that it had terminated her employment. *Id.*

Three months later, Kell lodged a grievance with the Board under "Board Policy DGBA," the local district rule establishing a default review process for

36

EPISD's employment terminations and suspensions. *Id.* The rule expressly stated that "an adverse employment action 'may be the subject of complaint under this policy only if the District does not otherwise provide for a hearing on the matter.'" *Id.* EPISD's policy also specifically addressed Whistleblower complaints, stating,

> Employees who allege unlawful discrimination or retaliation for reporting a violation of law to an appropriate law enforcement authority shall invoke this policy not later than 90 days after the date the alleged violation occurred or was discovered by the employee through the use of reasonable diligence. The grievant shall deliver his or her complaint to the Superintendent or designee. . . . Before bringing suit, an employee who seeks relief under Government Code Chapter 554 (whistleblowers) must initiate action under the District's grievance or appeal procedures relating to suspension or termination of employment or adverse personnel action.

*Id.*

Kell asserted that she had been fired in retaliation for cooperating with the FBI investigation and for reporting EPISD personnel's wrongdoing to law enforcement in June and October 2011, and she argued that she had not initiated a Chapter 21 proceeding because Chapter 21 did not address Whistleblower complaints. *Id.* at 385–86. The superintendent denied her request for review on the basis of Kell's having failed to timely pursue her Chapter 21 administrative remedies and because the board had fired her for misconduct, not for cooperating with federal authorities. *Id.* at 386. After the Board affirmed her termination, Kell filed suit in district court, and EPISD moved for summary judgment, complaining that the trial court lacked jurisdiction. *Id.*

37

The court considered whether Kell had invoked EPISD's "applicable" grievance procedure when she skipped over Chapter 21 prior to her termination but then filed a grievance post termination. *Id.* It concluded that she had failed to exhaust her applicable administrative remedies, depriving the trial court of jurisdiction. *Id.*

At the beginning of its analysis, the court acknowledged that EPISD had issued to Kell a notice of contract termination *and* of non-renewal, which—as set out above—implicated separate provisions of the education code. *Id.* at 387. *Compare* Tex. Educ. Code Ann. § 21.207 (term contract nonrenewal procedure), *with id.* § 21.251 (term contract termination procedure). The court raised the possibility that a Chapter 21 hearing *might* be the only way a term contract teacher could challenge a proposed termination based on the "highly formalized, quasi-independent administrative" and comprehensive statutory scheme, which sets out "the same conditions as a bench trial for teachers to challenge proposed terminations." *Kell*, 465 S.W.3d at 387 ("After reviewing the Education Code, we agree with EPISD and with *amicus curiae* that the Chapter 21 hearing appears to be not only the applicable procedure under the Act, but possibly the only way a term contract teacher may challenge a proposed termination under the Education Code.").

But the court did not resolve the case's merits based upon this hypothetical observation. Instead, the court's holding was premised on the fact that the internal grievance procedure relied upon by Kell, "Board Policy DGBA," specifically referred

38

her to EPISD's grievance or appeal procedures relating to termination of employment, which were those set out by statute in Chapter 21. *Id.* at 388 ("Even if Chapter 21 hearings are not the exclusive vehicle through which a termination may be challenged under the Education Code, Kell's reliance on EPISD's internal grievance policy in this case is misplaced."). The court pointed out that EPISD's policy recited that it applied only when no other proceedings were available; that before bringing a Whistleblower suit, the employee had to initiate action under the district's grievance procedures relating to termination of employment; and that EPISD's grievance procedures relating to termination of employment were those set out by statute in Chapter 21, subsection F. *Id.* Because Kell never attempted to invoke a Chapter 21 hearing, the court concluded that the trial court lacked jurisdiction. *Id.*; *see also Whitney v. El Paso ISD*, 545 S.W.3d 150, 155, 158 (Tex. App.—El Paso 2017, no pet.) (concluding, per *Kell*, that appellant had failed to initiate the applicable grievance procedure that was a prerequisite for bringing her Whistleblower claim when she sought to appeal El Paso ISD's refusal to entertain her grievance under Chapter 7 of the education code but had not invoked a Chapter 21 hearing to challenge her proposed termination).

Of course, one of the primary and significant distinctions between the instant case, *Kell*, and the cases that follow *Kell*, is the fact that Palazzolo actually went through the Chapter 21 process with regard to his proposed termination before filing a grievance in response to his actual termination. Another is the fact that FWISD's

39

policies specifically refer to *proposed* termination and *proposed* nonrenewal under Chapter 21 as exceptions to its general employee grievance policy, and there is no ambiguity presented in *Kell* about when Kell was actually terminated.

Additionally, *Kell* was decided in 2015, before the supreme court proclaimed in *McIntyre* that whether a claimant must exhaust administrative remedies depends on the nature and context of the claims asserted. *See McIntyre*, 499 S.W.3d at 825–27. *Compare Farran*, 409 S.W.3d at 657 (recognizing that the Whistleblower Act has its own statutory remedies and procedures that do not require exhaustion with the Commissioner under the education code), *with* Tex. Educ. Code Ann. § 21.301 ("Appeal to Commissioner").

### 3. *Powers v. Northside ISD*

We observe ab initio that we are not bound to follow *Powers* merely because Texas lies within the Fifth Circuit's geographical limits. *See Pidgeon v. Turner*, 538 S.W.3d 73, 83 (Tex. 2017) ("Fifth Circuit decisions, particularly those regarding federal constitutional questions, can certainly be helpful and may be persuasive for Texas trial courts."), *cert. denied*, 138 S. Ct. 505 (2017); *Barstow v. State*, 742 S.W.2d 495, 500–01 & n.2 (Tex. App.—Austin 1987, writ denied) (explaining that decisions of a federal circuit court do not bind any Texas court, even on federal questions, although they are persuasive and entitled to respectful consideration). We further note that *Powers* is a per curiam opinion, which is not considered precedential even in the Fifth

Circuit "except under the limited circumstances set forth in 5th Cir. R. 47.5.4." 662 F. App'x at 306.

In *Powers*, Northside ISD (NISD) suspended Powers, a principal, and Wernli, an assistant principal, in July 2013. *Id.* at 306–08. In accordance with NISD's "DFBA (Local)" grievance policy, Powers and Wernli filed grievances, which were denied on December 3, 2013. *Id.* at 308. A week later, the NISD Board of Trustees voted to terminate their employment, and Powers and Wernli were notified about the termination decision on December 17, 2013, in a letter that explained pursuant to the "attached 'DFBA (Legal)' policy, [they] could initiate a hearing process to appeal the termination." *Id.*

That policy provided that a term contract employee had 15 days after the date he or she received notice of a proposed termination or suspension without pay to seek a hearing before an independent hearing examiner. *Id.* at 309; *see* Tex. Educ. Code Ann. § 21.253(a). Powers and Wernli did so on December 30. 662 F. App'x. at 308. That process ended on April 22, 2014, when the Board took its final vote to actually terminate their employment. *Id.* Thirty days later, on May 22, 2014, Powers and Wernli filed their Whistleblower lawsuit, alleging that their terminations constituted unlawful retaliation. *Id.* at 306–07, 309. NISD raised governmental immunity as a defense and moved for summary judgment, which the federal district court denied. *Id.* at 307.

41

On appeal, NISD argued that Powers and Wernli had failed to timely file suit under the Whistleblower Act when they opted to exhaust the grievance process, contending that the December 3, 2013 denial of their grievances triggered the 30-day limitations period. *Id.* at 309. Powers and Wernli responded that the hearing procedure was not resolved until April 22, 2014, when the board terminated them, triggering the Whistleblower Act's 30-day deadline. *Id.* The Fifth Circuit concluded that the federal district court had not erred by holding that the Whistleblower Act suit was timely filed, particularly when NISD's briefing ignored the DFBA (Legal) document and offered no reason why compliance with that policy was not dispositive. *Id.*

FWISD construes *Powers* as holding that the Chapter 21 grievance process is the exclusive grievance process that must be initiated by a school employee who later files a Whistleblower suit. But that issue was not before the *Powers* court, and as set out below, on the record presented in the instant case, we disagree with FWISD's construction.

**F. Analysis**

FWISD argues that the Chapter 21 process ended on February 14, 2012, when FWISD's Board voted to pay Palazzolo one year's salary under education code section 21.304(f). Accordingly, FWISD contends that at that point, Palazzolo had thirty days—until March 15, 2012—to file his Whistleblower suit. But that process pertained to Palazzolo's *proposed* termination. As of February 14, 2012, Palazzolo may

have been finally *actually* terminated, but, as his February 23, 2012 grievance reflects, this was not made clear to him until a week later.

Based on the record before us, Palazzolo could have believed that he was still employed when—contrary to the Commissioner's express instructions on June 29, 2011—instead of tendering *full* compensation to Palazzolo as of the date he otherwise would have been reinstated (July 15, 2011), FWISD's July 25, 2011 letter told him that the enclosed check ($18,114.16) was his final check for the 2010–2011 school year (the last year on his two-year term contract) and informed him that "[t]he first paycheck for the 2011–2012 school year will be issued *to employees* on September 28, 2011." [Emphasis added.] By the time FWISD filed its motion to dismiss its appeal of the Commissioner's decision in this court on February 22, 2012, Palazzolo's 2010–2011 contract had long since expired. What is unclear from this record is whether the July 25, 2011 letter meant to indicate that his contract had been renewed for the 2011–2012 school year pending FWISD's appeal to the district court and then to this court. *Cf. O'Neal*, 251 S.W.3d at 52 ("O'Neal's claim is governed by Chapter 21 because it is an addendum to her teaching contract, was terminated 'before the end of the contract period,' and she 'requested' an appeal.").

FWISD continued the opacity of its dealings with Palazzolo after the February 14, 2012 board meeting, when it issued its February 17, 2012 letter enclosing two checks "as final payment in the above referenced matter" without further explanation, leading Palazzolo to file his February 23, 2012 grievance "in an abundance of

caution." FWISD finally clarified to Palazzolo that he was no longer a FWISD employee on February 28,[26] but it re-muddied the waters the next day by acknowledging his February 23, 2012 grievance and the DGBA (LOCAL) policy and directing Palazzolo to file additional documents in support of his grievance claim.

As of February 28, then, Palazzolo finally had a definite "termination of employment"—instead of a proposed "adverse personnel action"—for which he had to invoke "the applicable grievance or appeal procedure" within the Whistleblower Act timeframe. *See* Tex. Gov't Code Ann. § 554.006(a), (b). And FWISD set Palazzolo's grievance for a hearing, participated in mediation, heard Palazzolo's grievance on May 25, 2012, and disposed of it on June 8, 2012. Just under 30 days later, Palazzolo filed his Whistleblower lawsuit.[27] *See id.* § 554.006(d).

---

[26]At some point, a simple "You're fired," would have been considerably more useful to all parties involved and would have resulted in far less waste of tax dollars and judicial resources. Instead, in its February 28, 2012 letter, FWISD stated that the $67,088.49 check was Palazzolo's "final check from the District with regard to [his] employment with Fort Worth ISD" and informed him that his benefits would end the next day.

[27]In disposing of his grievance, FWISD informed Palazzolo that he could appeal at the July 17, 2012 board meeting. Under the circumstances here, however, it appears unlikely that the board—having already twice voted to terminate Palazzolo— would have had a change of heart. Accordingly, we cannot fault Palazzolo for abandoning the proceedings after obtaining a final decision from the superintendent and proceeding to file his Whistleblower lawsuit. He had, after all, already been burned before on "initiating" the grievance process with regard to other complaints. *See Palazzolo II*, 2014 WL 69889, at *2, *5–6 (holding that Palazzolo did not properly initiate the FWISD grievance process as to his complaints about a transfer and about an appraisal report because he "actively circumvented FWISD's efforts to redress the complained-of conduct [in the grievance process] by advising the Board that he had

Palazzolo followed the requirements of the DGBA (LOCAL) policy, which excepted "proposed" terminations made "*during the contract term*." By the time Palazzolo filed his DGBA (LOCAL) grievance, his contract had expired, and the record does not reflect his status between FWISD's July 25, 2011 letter about backpay and FWISD's February 28, 2012 letter clarifying his employment status. Accordingly, because we construe the pleadings liberally in favor of the plaintiff when faced with a plea to the jurisdiction and take as true all evidence favorable to the nonmovant, *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004), because nothing in Chapter 21 indicates what should happen when a proposed termination becomes an actual termination, because Whistleblower complaints do not require exhaustion with the Commissioner, *see Farran*, 409 S.W.3d at 657—unlike complaints about proposed terminations under Chapter 21[28]—and because the record reflects that Palazzolo sufficiently initiated his actual termination complaint under the applicable grievance procedure prior to filing the instant lawsuit within the Whistleblower Act limitations period, we hold that the trial court did not err by denying FWISD's plea to the jurisdiction, and we overrule FWISD's sole issue.

no dispute with his transfer and appraisal report" after filing his grievances but before filing his Whistleblower lawsuit).

[28]Indeed, we abhor the thought that a school board could otherwise attempt to buy off a Whistleblower claim—with its attendant allegations of governmental wrongdoing and retaliation—for the price of a year's salary under Chapter 21. *See* Tex. Educ. Code Ann. § 21.304(f).

45

## IV. Conclusion

Having overruled FWISD's sole issue, we affirm the trial court's order and remand this case to the trial court for further proceedings.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered:  June 13, 2019